UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JERSON AMILCAR MIJANGO VELASCO, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 26-11355-LTS |
| DAVID WESLING et al., | ) ) | |
| Respondents. | ) ) ) | |

ORDER ON MOTION TO ENFORCE JUDGMENT (DOC. NO. 15)

April 24, 2026

SOROKIN, J.

Before the Court is a motion by the petitioner in this immigration habeas case asking the Court to enforce its previous Order allowing the petition.  Doc. No. 15.  The petitioner argues that his ongoing detention is a result of a bond hearing that did not comport with the Court's Order.  The respondents have opposed the motion.  Doc. No. 18.  Upon review, the motion to enforce is ALLOWED for the reasons and to the extent described herein.

Jerson Amilcar Mijango Velasco, a native of El Salvador who has lived in the United States for ten years, filed a habeas petition after he was arrested and detained by immigration authorities last month.  Doc. No. 1.  The petition elicited an abbreviated response by the government that acknowledged this Court's rulings in prior similar cases, conceded that the same result would apply here, and suggested no further briefing or argument was necessary.  Doc. No. 7.  In light of those representations, the Court promptly allowed the petition.  Doc. No. 8.  As relief, the Court required the respondents to release Mijango Velasco unless he was given a bond

hearing by April 1, 2026.  Id.  The Court further directed that such a hearing be conducted pursuant to 8 U.S.C. § 1226(a), subject to the burdens of proof the First Circuit has found are required by the Constitution's guarantee of due process.  Id. (citing Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021)).

On April 3, the respondents reported that a bond hearing had occurred, at which an immigration judge ("IJ") denied bond.  Doc. No. 11.  The respondents attached a check-the-box form order memorializing the IJ's finding that Mijango Velasco "is a danger to the community by clear and convincing evidence."  Doc. No. 11-1.  The order provides no reasoning, cites no evidence, and does not in any way reflect whether the IJ considered any alternatives to detention other than (or in addition to) cash bond.  Id.

On April 16, Mijango Velasco filed the motion now pending.  Doc. No. 15.  He contends that the respondents did not provide the relief ordered by this Court because the IJ failed to afford Mijango Velasco the due process guaranteed by the Constitution and the First Circuit's precedent governing bond hearings in three ways:

> (1) the IJ did not properly allocate burdens of proof in compliance with Hernandez-Lara, and the government failed to satisfy its burden by proving by clear and convincing evidence that Mr. Mijango Velasco is a danger; (2) the IJ's exercise of discretion in denying bond was arbitrary and capricious such that it violated due process; and (3) the IJ failed to consider alternatives to detention . . . .

Doc. No. 15 at 2.  The motion was accompanied by exhibits including the evidence the government placed before the IJ in support of its request for detention without bond, Doc. No. 15-3, and the evidence Mijango Velasco submitted to the IJ in support of his request to be released, Doc. No. 15-4.  The respondents have neither contested nor supplemented these exhibits, except by filing a copy of the transcript of the bond hearing as the Court directed them to do.  Doc. No. 18-1.

2

The record before the Court reveals several things.  First, besides a DHS form memorializing the recent arrest by ICE,[1] the government submitted to the IJ a single piece of evidence: a 2021 police report documenting a motor-vehicle stop that resulted in Mijango Velasco's arrest by local police for driving without insurance and possession of ammunition and a BB gun.  Doc. No. 15-3 at 4–7 (containing one-page narrative of relevant encounter).  From that police report alone, the government urged the IJ to find Mijango Velasco poses a danger to the community warranting detention without bond.  See Doc. No. 18-1 at 4 ("DHS argues that the respondent is a danger based on the police report that was submitted in evidence.").

Mijango Velasco, for his part, submitted a six-page legal memorandum in support of his bond request, Doc. No. 15-4 at 8–13, accompanied by thirty-four exhibits divided into six categories, id. at 14–143.[2]  This collection of exhibits, enumerated in an index, id. at 3–7, included: the docket for the criminal action arising from the 2021 arrest, showing the charges had

---

[1] The arrest occurred during a targeted stop of a car in which he was a passenger, not in connection with any criminal or otherwise dangerous activity, and it occurred "without incident" (that is, without any resistance or evasive actions taken by Mijango Velasco).  Doc. No. 15-3 at 9–10.  The bond hearing transcript makes clear that neither the government nor the IJ relied on the DHS form in arguing or resolving the question of dangerousness.

[2] Per the transcript, Mijango Velasco's evidence was submitted on the day the bond hearing occurred, which his counsel explained as having resulted from a disruption in her work schedule due to a necessary medical procedure.  See Doc. No. 18-1 at 3.  DHS counsel implied he had not been able to review all of Mijango Velasco's submission in advance of the bond hearing but did not seek to delay the hearing and, obviously, did not relent in his request for detention without bond.  Id. at 4.  Besides stating she would "give the appropriate weight to . . . the respondent's evidence," the IJ did not make clear whether she had been able to read the voluminous submission made on Mijango Velasco's behalf before presiding over the hearing.  Id. Adjudicating the detention or release of a person—a liberty decision—is one of the more serious matters resolved by judges.  It requires review and consideration of all the relevant evidence submitted.  Further, the Court's own experience from other immigration habeas matters over the past several months has included more than one instance in which the respondents have sought— and been granted—an extension of the deadline set by the Court for a bond hearing, where they were unable to complete a bond hearing before the deadline set by the Court due to reasons beyond their control.  No such request was made in this case.

been dismissed at the Commonwealth's request, id. at 34; a letter from the lawyer who represented Mijango Velasco in that case explaining the conditions his client had satisfied to secure the dismissal, id. at 36; documents showing Mijango Velasco's work history, including two years' worth of W2s from two employers, id. at 49–71; documents concerning his family, including his father and his partner, both of whom are Lawful Permanent Residents of the United States, id. at 73–86; a letter from the program manager of the Central American Youth Initiative at Roca, describing her familiarity with Mijango Velasco based on his "430 hours of engagement with Roca, including cognitive behavior therapy, 'rewire' training focused on positive behaviors based on values, job training, and other education," before his graduation from the program in June 2024 (all of which occurred after his 2021 arrest), id. at 108–10; and four exhibits supporting Mijango Velasco's pursuit of alternatives to detention, see id. at 118–43.  On the basis of this substantial evidentiary showing, Mijango Velasco (through counsel) asked the IJ for release on bond, "which may include alternatives to detention" such as "a GPS monitor," and contested the government's showing of dangerousness.  Doc. No. 18-1 at 8–12.  He also pointed the IJ to First Circuit caselaw limiting the extent to which a police report, standing alone, can provide a basis for finding that the government has met its burden of proof in immigration proceedings.  Id. at 13–14.

The transcript of the bond hearing reflects that the proceeding was attended by Mijango Velasco's father and several "individuals from his workplace," as well as his partner (who appeared via video).  Doc. No. 18-1 at 6.  Nevertheless, the IJ denied bond, providing the following explanation:

> Based on the evidence in the record – I've heard the arguments of the parties.  I think that the respondent, counsel – I understand where you're coming from.  The court understands that and appreciates all the evidence that you have filed.  However, the court will find that the respondent's a danger to the community by

> clear and convincing evidence. It will deny the bond request in this case. I find that the respondent is a danger, based on the prior police report. I find it reliable. The court will find it – and based, in a combination of the BB gun – he was revving his engine very loud, actually. So, at the end of the day, combined with the bullets, the 22 caliber bullets – I am going to find – and on the prior charge as well – I understand they were dismissed at – the court cannot overlook the circumstances of the arrest, and on the police reports. So, the court will find that the respondent's a danger to the community, by clear and convincing evidence.

Id. at 14–15. Besides acknowledging the dismissal of the state-court charges years earlier, the IJ did not mention any of the information contained in the dozens of exhibits filed by Mijango Velasco. At no point did the IJ address GPS monitoring or any other alternative to detention that might be available in combination with bond.

Careful consideration of the foregoing leads the Court to conclude that the bond hearing held in this case was deficient, and thus did not comport with this Court's Order, in at least two respects. First, the IJ altogether failed to consider whether any alternatives to detention existed that would ensure the safety of the community notwithstanding the evidence of dangerousness advanced by the government. See Costa v. McDonald, No. 25-cv-13469-AK, 2026 WL 371198, at *2–3 (D. Mass. Feb. 10, 2026) (holding that, by failing to consider alternatives, "the Government failed to provide Petitioner with constitutionally sufficient procedure" and discussing supporting caselaw). This failure is especially glaring where Mijango Velasco raised such alternatives in his written memorandum, submitted multiple exhibits in support of such alternatives, and expressly reiterated his request that the IJ consider such alternatives during the bond hearing. The government did not acknowledge alternatives, let alone advance a cogent argument as to why no alternatives could mitigate the danger it believed was shown by the 2021 police report. Moreover, and substantively, the powerful array of evidence submitted by Mijango Velasco imposed a substantial roadblock to the apparent inferences drawn from the police report supporting the notion that no alternatives to detention existed. In these

5

circumstances, the IJ's silence as to alternatives rendered the bond hearing constitutionally deficient.

Second, as described above, the record before the IJ was notably lopsided. On one side of the scales was the one-page narrative in a solitary police report offered by the government, from an arrest years earlier that had not yielded any criminal conviction. On the other side, more than a hundred pages of exhibits describing Mijango Velasco's ties to the community, providing context for his one contact with the criminal-justice system, illuminating his immigration and work history, and—importantly—detailing productive efforts he undertook in the wake of his single arrest. Evidence from the period after his arrest cannot reasonably be ignored. The IJ was not asked to determine whether Mijango Velasco posed a danger in the immediate wake of his 2021 arrest. She was asked whether he poses a danger now, more than four years later. Plainly, his conduct during those intervening years must be accounted for in any effort to meaningfully assess the risks he presently poses. Faced with such a record, the IJ disregarded the fundamental principles and burdens required by the Constitution and the law governing bond hearings within the First Circuit by relying exclusively on an uncorroborated police report without supplying even the briefest of explanations to show how (or even whether) she had evaluated the fulsome record amassed by Mijango Velasco to counter the government's dangerousness argument and support his request for release.

In sum, the Court ordered the respondents to provide Mijango Velasco a hearing pursuant to § 1226(a) at which the question of detention was meaningfully evaluated pursuant to the statutory and constitutional law governing such hearings. The respondents failed to provide such a hearing. Mijango Velasco's continued detention in these circumstances violates the Court's

6

Order allowing the petition and granting relief in this case.[3]  Accordingly, the motion to enforce

(Doc. No. 15) is ALLOWED.  The respondents shall RELEASE Mijango Velasco immediately,

no later than 7 PM today.  This order is without prejudice to the respondents requiring Mijango

Velasco to comply with reasonable conditions of supervision upon his release, provided such

conditions are identified and imposed within seven days of this Order.  The respondents shall, by

May 4, 2026, file a status report confirming their compliance with this Order.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

---

[3] The Court notes and rejects the respondents' exhaustion argument.  Doc. No. 18 at 1–2.  The pending motion does not argue, and this Court does not here find, that this action provides a vehicle for ordinary appellate review of any bond determination by an IJ, or that this IJ simply made the wrong decision in this case.  Rather, Mijango Velasco argues, and this Court agrees, that the respondents failed to comply with its ordered relief by providing a bond proceeding that was obviously constitutionally deficient in the ways described above.