UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GERSON AMILCAR MIJANGO VELASCO, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 26-11355-LTS |
| DAVID WESLING et al., | ) ) ) | |
| Respondents. | ) ) ) | |

MEMORANDUM AND ORDER ON
MOTION FOR ATTORNEYS' FEES (DOC. NO. 22)

July 7, 2026

SOROKIN, J.

Gerson Amilcar Mijango Velasco, the petitioner in this habeas action, seeks an award of

attorneys' fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

Doc. No. 22.  The respondents oppose Mijango Velasco's motion.  Doc. No. 23.  For the reasons

that follow, Mijango Velasco's motion is ALLOWED.

I.    BACKGROUND

Mijango Velasco came to the United States from El Salvador as an unaccompanied minor

in 2016.  Doc. No. 1 ¶ 2; Doc. No. 15-4 at 15.  He filed a timely application for asylum and was

granted Special Immigrant Juvenile Status, which renders him eligible for permanent residency.

Doc. No. 1 ¶ 2; Doc. No. 15 at 2; Doc. No. 15-4 at 39.  Removal proceedings were terminated,

and he recently applied for permanent residency.  Doc. No. 15 at 2; Doc. No. 15-4 at 41.  His

partner is a lawful permanent resident, as is his father.  Doc. No. 15 at 3.  He has completed

seven years of cognitive-behavioral therapy, education, and vocational training through a youth-

focused community organization where he developed a longstanding relationship with an experienced social worker.  Id. at 4–5.  He works and helps to care for his partner's school-aged children.  Id. at 3.

On March 20, 2026, Mijango Velasco was arrested by ICE officers in Everett, Massachusetts, where he lives.  He promptly filed a habeas petition challenging his detention without being provided a bond hearing.  Doc. No. 1.

The respondents answered the petition on March 25, 2026, submitting an abbreviated memorandum that conceded Mijango Velasco's claim was similar to those presented by other petitioners this Court had recently granted relief, and that "the same result" would apply here if the Court adhered to its reasoning.  Doc. No. 7.  The abbreviated response in no way disputed or supplemented the facts alleged by Mijango Velasco.  Id.

After reviewing the petition and the response, the Court promptly allowed the petition. Doc. No. 8.  As relief, the Court ordered the respondents to release Mijango Velasco "by 6 PM on April 1, 2026, unless he is provided a bond hearing under 8 U.S.C. [§] 1226(a) before that time," with the "burdens of proof" defined by binding First Circuit precedent applicable at any bond hearing  Id.  In a status report filed April 3, the respondents notified the Court that a bond hearing had occurred, at which Immigration Judge ("IJ") Luciana Dubuc had denied bond.  Doc. Nos. 11, 11-1.

About two weeks later, Mijango Velasco filed a motion asking the Court to enforce its prior order, arguing that the bond hearing had been constitutionally deficient.  Doc. No. 15. Though the respondents opposed the motion, they argued only that Mijango Velasco should have been required to exhaust administrative remedies by appealing the bond denial administratively;

they did not defend the merits of the IJ's decision or suggest the bond hearing had comported with the Constitution's due process guarantee.  Doc. No. 18.

On April 24, 2026, the Court determined that the respondents had failed to provide a bond hearing that comported with the Constitution, noting that the record was "notably lopsided" in favor of Mijango Velasco but that the IJ had nevertheless failed to acknowledge or engage with "the fulsome record [he had] amassed" to counter the government's arguments for detention.  Doc. No. 19 at 6.  The Court concluded that the respondents had not complied with its directive that they ensure a bond hearing "at which the question of detention was meaningfully evaluated pursuant to the statutory and constitutional law governing such hearings."  Id.  Thus, the Court allowed Mijango Velasco's motion to enforce and ordered his immediate release.  Id. at 7.  Judgment entered on May 4, 2026, Doc. No. 21, after the respondents confirmed they had complied by releasing Mijango Velasco from their custody, Doc. No. 20.

In the wake of these events, Mijango Velasco filed a motion pursuant to the EAJA seeking an award of attorneys' fees and costs.  Doc. No. 22.  The motion was supported by declarations from Mijango Velasco and his counsel, along with an itemized statement of work performed by counsel on this case.  Doc. Nos. 22-1, -2.  The total amount of fees and costs sought is $4,739.  Doc. No. 22 at 13.

The respondents opposed Mijango Velasco's motion on two grounds.  First, they urged that immigration habeas matters are not "civil actions" within the scope of the EAJA.  Doc. No. 23 at 3–6.  Second, the respondents argued that their positions in this action were "substantially justified," such that an award of fees is not appropriate.  Id. at 6–13.  They have advanced no other objections to the requested award.

II.    LEGAL STANDARD

Pursuant to the EAJA:

> [A] court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the  United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  The same statute goes on to specify:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application which shows . . . the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed.

§ 2412(d)(1)(B).

The EAJA is an exception to the general rule that "each party is . . . required to bear its own attorneys' fees."  Castañeda-Castillo v. Holder, 723 F.3d 48, 56 (1st Cir. 2013).  It is "strictly construed in favor of the government," because "it effectively amounts to a partial waiver of sovereign immunity by the United States."  Id. at 57.  From the statutory text, the First Circuit has derived four prerequisites to securing an EAJA award: 1) "prevailing party" status in a "civil action"; 2) a timely request for fees; 3) that the government's position in the action "was not substantially justified," and 4) the absence of "special circumstances" that would "make an award against the government unjust."  Id.

Only two of the four conditions are at issue here.  The Court addresses them in turn.

III.    DISCUSSION

The respondents have waived certain arguments opposing the pending motion.  For example, they do not contest the timeliness of Mijango Velasco's fee motion.  The motion was filed within thirty days of this Court's judgment, which the respondents did not appeal and is

4

now final.[1]  The respondents also identify no circumstances that would render a fee award unjust here, and the Court can conceive of none on the record before it.  Nor do the respondents dispute that Mijango Velasco has "prevailed" in this action.  He plainly did.  Indeed, were it not for his petition, this Court's ordered relief, and this Court's enforcement of that relief, Mijango Velasco would not have been released from detention.  The pair of arguments the respondents have advanced fare no better than those they have waived.

First, for reasons the Third Circuit has explained in detail in an opinion this Court has "agree[d] with and adopt[ed] . . . in its entirety" in prior cases, "the EAJA unambiguously applies to habeas challenges to immigration detention under 28 U.S.C. § 2241."  Peruano v. Wesling, No. 26-cv-10300-LTS, 2026 WL 1413758, at *12 & n.18 (D. Mass. May 20, 2026) (quoting and adopting Michelin v. Warden, Moshannon Valley Corr. Ctr., 169 F.4th 418, 421–33, 435–36 (3d Cir. 2026)); see also Order at 6 & n.4, Ajbal v. Wesling, No. 26-cv-10190-LTS (D. Mass. Mar. 27, 2026), ECF No. 27; Order at 3 n.1, Ribeiro v. Wesling, No. 25-cv-13887-LTS (D. Mass. June 5, 2026), ECF No. 22; Order at 3 n.1, Lopes v. Hyde, No. 25-cv-14017-LTS (D. Mass. June 5, 2026), ECF No. 17.  Other sessions of this Court have likewise rejected the government's attempt to narrow the meaning of "any civil action" in the EAJA, concluding instead that its plain meaning reaches civil lawsuits brought pursuant to § 2241 that challenge civil immigration detention.  E.g., Ndongala v. Wesling, No. 26-cv-10194-ADB, 2026 WL 1534981, at *1 (D. Mass. June 1, 2026); Orrego v. Hyde, No. 26-cv-10260-BEM, 2026 WL 1480362, at *2 (D. Mass. May 27, 2026).  Nothing in the respondents' submissions in this case provides reason to

---

[1] Judgment entered May 4, 2026, Doc. No. 21, and the appeal deadline has now passed.  See Fed. R. App. P. 4(a)(1)(B).  The EAJA does not permit a fee award before final judgment, though a party seeking such an award is not foreclosed from receiving one by virtue of submitting a request prematurely.  See Melkonyan v. Sullivan, 501 U.S. 89, 103 (1991).

revisit, let alone revise, the Court's conclusion that immigration habeas petitions are "civil actions" within the meaning of the EAJA.

Second, the respondents bear the burden to establish that their position in this matter was "substantially justified," meaning it had a "reasonable basis in . . . law." Castañeda-Castillo, 723 F.3d at 73. They have not met that burden here. Rather, the record leads the Court to find that the respondents' positions have been substantially unjustified at every turn, including after Mijango Velasco first prevailed in this habeas action.

There was no substantial justification for the respondents' decision to arrest and detain Mijango Velasco in the first instance without providing a bond hearing, nor for their (half-hearted) defense of his detention in response to his habeas petition. By the time the respondents detained Mijango Velasco, they understood that District Judges throughout the First Circuit had repeatedly and (as far as the Court is aware) uniformly rejected the view that the relevant immigration-detention statutes supported treating a noncitizen in his position as a person subject to automatic, mandatory detention without bond. See Ndongala, 2026 WL 1534981, at *3 (citing "flood of decisions in this District and beyond . . . repeatedly reject[ing]" position invoked by government to justify detention and opposition to habeas petition as establishing that "reasonable person could not think" government's recently adopted position "was correct"); cf. Orrego, 2026 WL 1480362, at *3 (finding it "strain[s] logic" to submit abbreviated response conceding case is "directly parallel" to others in which detention without bond hearing was deemed unlawful but then claim opposition to petition "was substantially justified").

There also existed precedent concerning the detention of noncitizens in Mijango Velasco's position that established "categorical due process requirements" the respondents were not free to treat as "effectively inconsequential to [their] immigration enforcement program

6

within the First Circuit." Bernardo-Rodrigues v. Hyde, No. 25-cv-00553, 2026 WL 370863, at *3–4 (D. Me. Feb. 10, 2026) (discussing Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021)). This legal landscape powerfully undermines any justification the respondents offer for their insistence that it was reasonable to treat Mijango Velasco as though he were subject to mandatory detention when ICE officers arrested him in March.

The respondents cite no change in circumstances that warranted revisiting Mijango Velasco's custody status this year—for example, new criminal charges or a failure to comply with conditions imposed on him by any federal agency. See Doc. No. 15 at 2–3 (describing petitions, decisions, and work authorization within purview of USCIS during years he has lived in this country). When seeking to justify his continued detention before the IJ, the respondents relied entirely on criminal charges Mijango Velasco faced five years ago, which were dismissed long before his encounter with ICE, and they ignored all of the substantial evidence of his productive efforts in the intervening years (as well as what that evidence said about the danger he posed at the time of the bond hearing). Despite this Court's ordered relief and the Constitution's due process guarantee, the respondents provided Mijango Velasco a perfunctory and patently deficient bond proceeding, requiring this Court's intervention again to enforce the relief it had already ordered—over the respondents' objection, Doc. No. 18.

In these circumstances, Mijango Velasco is entitled to an award of fees and costs. The respondents have not contested his submissions concerning the hours spent or the rate proposed for the work of his attorneys, so the Court awards him the total amount he seeks.

IV.    CONCLUSION & ORDER

In sum, this is a civil action, Mijango Velasco is a prevailing party, and the respondents' position was not substantially justified. The record supports the reasonableness of the amount of fees and costs he seeks. Accordingly, his EAJA motion (Doc. No. 22) is ALLOWED. By

August 7, 2026, the respondents shall pay to Mijango Velasco's counsel fees and costs in the amount of $4,739.  The respondents shall file a status report confirming compliance with this Order by the earlier of August 12, 2026, or within three days of making the required payment.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge